UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY HOCKMAN,
ROBERT D. FALOR, and
THE FALOR COMPANIES,

                       Plaintiffs,

                                               Case No. 07-CV-14268

vs.

                                               HON. GEORGE CARAM STEEH

ROBERT C. SCHULER,

                       Defendant.

_____/

<u>ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE</u>

      This legal malpractice action arises out of defendant Robert Schuler's alleged mishandling and settlement of a lawsuit brought against plaintiffs Geoffrey Hockman, Robert D. Falor, and The Falor Companies (TFC). Now before the court is Schuler's motion to to transfer venue for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a). Oral argument was heard on January 17, 2008 and March 13, 2008. For the reasons stated on the record and below, defendant's motion to transfer venue shall be denied.

<u>BACKGROUND</u>

      Plaintiffs Robert Falor and Jeffery Hockman are principals of the now defunct TFC. Robert Falor is a resident of Chicago, Illinois. Jeffery Hockman is a resident of Birmingham, Michigan. TFC was in the business of investing in hotels and condominiums. TFC is an Illinois corporation. Defendant Robert C. Schuler is an

attorney licensed to practice in Ohio who lives in the Southern District of Ohio. He

invested in eight limited liability companies formed or administered by the plaintiffs

either individually or in his capacity as sole member of Anwalt Hotel Holdings, LLC

(Anwalt). One of those limited liability companies was South Beach Investors, LLC

(SBI). Schuler, acting through Anwalt, agreed to provide the following services to the

plaintiffs via their participation agreement:

> to utilize its contacts and relationships to Introduce Falor to institutions,
> beneficial owners and other entities of interest to Falor. Anwalt further
> agrees that it shall, when appropriate, provide Falor assistance in its
> interaction with various governmental entities affecting the business of
> Falor or the investment Activity in which Falor is engaged. Additionally,
> Anwalt agrees to interact, consult with and give direction to the attorneys
> responsible for preparing and processing the documents necessary for
> bringing each Investment Activity to fruition.

Under the express language of the participation agreement quoted above, plaintiffs

allege that Schuler agreed to provide legal services. The participation agreement calls

for application of Florida law to control the construction, validity, and the parties'

performance under the agreement. Schuler maintains that he was an equity investor

who from time-to-time assisted with the advancement of various projects.

In June, 2005, the plaintiffs here were sued by R&Z Real Estate, LLC, Terry

Driscoll and Florentine Driscoll (the R&Z plaintiffs) in Cuyahoga County, Ohio. In the

Ohio lawsuit, the R&Z plaintiffs allege that plaintiffs here, and others, fraudulently

solicited them to purchase membership interests in SBI and sold them securities in

violation of Ohio law. Plaintiffs here contend that R&Z plaintiffs never purchased an

interest in SBI, but rather, that they lent money to TFC for use in connection with the

activities of SBI and TFC. In regard to this loan, Hockman alleges that he and others in

his Birmingham, Michigan office had contact with Schuler. According to plaintiffs, Schuler notified them of the lawsuit and said that he would represent them in the lawsuit, that he would "work it out." Plaintiffs allege that they agreed to have Schuler represent them.

After the lawsuit was filed, the plaintiffs were defaulted but later entered into a settlement. The settlement called for periodic cash payments totaling $1,500,000 to be made by the plaintiffs here to the R&Z plaintiffs. Part of the settlement agreement called for collateral valued at $2,100,000 to be placed in escrow. In 2006, plaintiffs failed to make the payments owing, and the R&Z plaintiffs executed the collateral. In addition, they obtained a judgment against the plaintiffs in the amount of $1,300,000. In addition to his contacts relative to his limited liability companies, plaintiffs claim that Schuler also maintained contacts with Michigan with regard to the lawsuit. Specifically, they rely on Hockman's affidavit wherein he states that Schuler had substantial contact with him at the Birmingham office in regard to the R&Z lawsuit and settlement of the same.

Plaintiffs originally filed this action in Oakland County Circuit Court. Schuler removed based on diversity jurisdiction. The original one-count complaint sought relief against Schuler for legal malpractice arising out of the settlement of the underlying action. In their legal malpractice claim, plaintiffs allege, among other things, that Schuler had a conflict of interest as a member of SBI. After Schuler filed an answer denying that an attorney-client relationship existed, plaintiffs amended their complaint once to add a breach of fiduciary duty claim, and later filed a second amended complaint (with leave of court) to add a negligence count.

Now before the court is Schuler's motion to transfer venue to either the Northern District of Ohio or the Southern District of Ohio. Plaintiffs allege that the sole purpose of the motion is to harass and burden them. Schuler alleges that transfer is warranted because plaintiffs are already involved in litigation in the Southern District of Ohio, the underlying lawsuit against plaintiffs is pending in Cuyahoga County, Ohio, and the majority of witnesses reside in Ohio. Schuler lists fifteen categories of potential witnesses, including, for example, investors of TLC, and attorneys from at least nine different law firms involved in the underlying lawsuit. Plaintiffs, on the other hand, dispute that the litany of witnesses listed by Schuler are relevant to the instant lawsuit.

STANDARD OF LAW

An action may be transferred to another district for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a) which provides:

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In order to transfer a case, the following three criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties. Kepler v. ITT Sheraton Corp., 860 F. Supp. 393, 398 (E.D. Mich. 1994)(citations omitted).

In deciding a motion to transfer venue under § 1404(a), this court considers seven criteria: (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and

4

inexpensively; and (7) the interest of justice.  Id. at 398; International Show Car Ass'n v. ASCAP, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992).  In deciding a motion to transfer venue for the convenience of the parties, the plaintiff's choice of forum should be granted deference.  Kepler, 860 F. Supp. at 399.  The court considers "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006).

ANALYSIS

Schuler moves for this court to transfer venue to either the Northern District of Ohio or the Southern District of Ohio.  Plaintiffs respond that the case cannot be transferred to the Northern District of Ohio in Cleveland because venue does not lie there under 28 U.S.C. § 1391(a).   Section 1391(a) provides that an action may be brought only in:

(1)     a judicial district where any defendant resides, if all defendants reside in the same State,

(2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject matter of the action is situated, or

(3)     a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Under § 1391(a), plaintiffs contend that this action may not be brought in the Northern District because Schuler resides in the Southern District of Ohio, the legal services he provided did not occur in the Northern District of Ohio, and venue is proper in the

Eastern District of Michigan under § 1391(a)(2)[1] or the Southern District of Ohio. In his reply brief, Schuler contends venue is proper in the Northern District of Ohio as that is where "a substantial part of the events or omissions giving rise to this case occurred," but based on "plaintiffs' preference," he consents to limit his request to transfer venue to the Southern District of

---

[1]Schuler contends that venue is lacking in this forum, but he is barred from contesting venue here under Fed. R. Civ. P. 12(b)(3) because it removed this lawsuit here from Oakland County Circuit Court.

O hio.  At oral argument, however, Schuler continued to argue in favor of transfer to Cleveland.    Thus, the court will consider whether transfer would be appropriate to either Columbus or Cleveland.  Since Schuler seeks transfer to either the Northern District of Ohio or the Southern District, the court's first inquiry is whether this action could have been brought in either forum, thus satisfying § 1391(a).  The underlying lawsuit was filed in the Northern District of Ohio, thus, that forum qualifies as a "judicial district in which a substantial part of the events or omissions giving rise to the lawsuit occurred.  28 U.S.C. § 1391(a)(2).  This case also could have been brought in the Southern District of Ohio as that is where Schuler resides.  28 U.S.C. § 1391(a)(3).  This court now reviews the seven criteria to determine if transfer is warranted for the convenience of the parties and witnesses.

A.    Convenience of the parties

Hockman resides in Michigan.  He has retained Detroit counsel.  Falor and the now defunct TFC are residents of Illinois who have agreed that prosecution of this action in Michigan is in their best interests.  Schuler resides in Ohio but has retained Detroit counsel.  Given the three forums where the parties reside, Schuler admits that where the parties reside "is likely not a significant factor in weighing whether the case should be transferred."  In considering where the parties reside, however, this court is mindful that it must give significant deference to the plaintiffs' choice of forum.  Kepler, 860 F. Supp. at 399.  "There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).

Plaintiff maintains that it would be burdensome to require his Detroit counsel to travel 230 miles to Columbus when they are not admitted to practice in the Southern District of Ohio. Schuler suggests it would not be burdensome for Hockman to travel to the Southern District of Ohio as Hockman is an Ohio State football season ticket holder, a member of The Ohio State University Alumni Band, and travels to Columbus to visit his mother. However prejudicial Hockman's loyalties to The Ohio State University football team may at first blush appear to a better informed Michigan football fan, Hockman's travels to Columbus for strictly personal reasons are wholly irrelevant to the inquiry now before the court. The question here involves plaintiffs' connection to the forum state with regard to the malpractice claim. Hockman was a Michigan resident throughout the litigation of the underlying matter. Any legal services which Schuler allegedly provided to Hockman in the defense of that lawsuit were for his benefit in Michigan. Hockman was in Michigan during all the times that Schuler allegedly provided him with legal advice.

Schuler further argues that it would not be inconvenient for plaintiffs to prosecute this action in Ohio as there is already a judgment pending against them in Cuyahoga County, Ohio and two other lawsuits pending against them in the Southern District of Ohio. Plaintiffs claim there are only two lawsuits pending against them in Ohio, the first of which is the underlying lawsuit at issue here.[2] The plaintiffs contend that they never defended the underlying lawsuit because they relied on the advice of Schuler to their

---

[2]Plaintiffs admit that there is another lawsuit pending against TFC in Ohio state court but expects that matter to be dismissed as it is duplicative of a federal cause of action which was recently transferred to a Federal District Court in Illinois per stipulation of the parties.

detriment. They are now involved in post-judgment proceedings in that lawsuit in this State. Because Schuler's alleged malpractice is the gravamen of this lawsuit, equities tip in favor of not affording much weight to the location of the underlying lawsuit.

With regard to the second lawsuit pending against plaintiffs in Ohio, that matter involves an action filed by Anwalt Energy Holdings, LLC - a Schuler entity - against TFC which is pending in the Southern District of Ohio. Plaintiffs claim that they have not appeared in that action or proffered any defense. Given the deference owing to the plaintiffs' choice of forum, this court cannot find that it would be more convenient for the parties to litigate this matter in the Northern or Southern District of Ohio.

B.    Convenience of the witnesses

The plaintiffs in the underlying lawsuit - James Rokakis, Nicholas Zarnas, Terry Driscoll and Florentine Driscoll - reside in Cleveland and Brecksville, Ohio and Schuler argues that these individuals will testify that Schuler did not hold himself out to be counsel to Hockman, Falor and TFC. Schuler also maintains that attorneys and staff members from nine law firms,[3] all of which are located in Ohio, will testify as witnesses in this matter. In total, Schuler predicts that at least 20 witnesses, all of whom hale from Ohio, will testify in this matter, most of them for the proposition that he never held himself out to be counsel for the plaintiffs here. Plaintiffs, on the other hand, submit the affidavit of Hockman in which he avers that most of the individuals identified by Schuler

---

[3]The law firms which represented the R&Z plaintiffs in the underlying matter are Douglass & Associates; Walter & Haverfield; Weltman, Weinberg & Reis Co., Eric R. Waite & Associates, and Seeley, Savidge & Ebert. Schuler also avers that McGlinchey & Stafford; Buckley King, and Vorys, Sater, Seymour & Pease were also involved in the underlying lawsuit. Schuler also names himself and attorney and staff from his law firm of Maguire & Schneider as witnesses.

as prospective witnesses were not involved in any respect to the negotiation and drafting of the settlement and many of them were not involved in the underlying lawsuit in any respect prior to judgment being entered.  Plaintiffs contend that all of the records regarding dealings between plaintiffs and the R&Z plaintiffs are located in Michigan.  Other than Hockman himself, however, plaintiffs have listed no witnesses who reside in Michigan.

Plaintiffs also contend that the question of whether or not an attorney-client relationship existed will be decided based on the character of services rendered and will not be based on what Schuler told third-parties or on what third-parties "believe" about his relationship to the plaintiffs.  Plaintiffs argue that a very small number of Ohio witnesses will actually be called to testify and the testimony of those individuals can be elicited by their voluntary attendance in Michigan or be preserved by deposition.  Plaintiffs do not dispute that the four plaintiffs in the underlying action reside in Ohio.  Even if Schuler's list of potential witnesses is grossly exaggerated, it does appear that the majority of witnesses do reside in Ohio and thus, it appears to the court that an Ohio forum would be more convenient for the witnessses.

C.  Access to proof

In his affidavit, Hockman states that substantial written records exist in Birmingham, Michigan regarding the investment entities and the relationship of plaintiffs to the R&Z plaintiffs and the written contacts between plaintiffs and Schuler.  Schuler argues that the majority of the proof lies in Ohio as the underlying action was filed in that forum.  Plaintiffs respond that the court file is not located in the Southern District of Ohio, and in any event, those court records may be easily obtained and will be self-

authenticating at trial.  The only documents in Cleveland are the complaint, service of process, and an order of dismissal.  Moreover, relevant court documents exist in Michigan arising out of the collection activities initiated by the R&Z plaintiffs in Oakland County Circuit Court.  After carefully considering where the access to proof lies, this court finds that the scales tip in favor of the plaintiffs.  Where the documents in Ohio stem from the underlying lawsuit - whose alleged mishandling gives rise to this legal malpractice claim here - it strikes this court as unfair to hale the plaintiffs to a presumptively less favorable forum on that basis.

D.    Cost to obtain unwilling witnesses

Schuler argues that there are at least 20 non-party witnesses located in Ohio.  As discussed earlier, plaintiffs counter that only a small handful of non-party witnesses exist whose testimony can easily be secured by deposition conducted in Ohio.  In terms of transfer to Columbus in the Southern District of Ohio, the cost to obtain unwilling witnesses, most of whom reside in Cleveland, is the same as if the case were to remain in Detroit.  This is true because the subpoena power of the court only extends to any place within the district or any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection.  Fed. R. Civ. P. 45(b)(2).

  Whether the case is decided here or is transferred to the Southern District of Ohio makes no difference as Cleveland is more than 100 miles from Detroit or Columbus.  Given this reality, the cost to obtain unwilling witnesses is the same whether this case is litigated in Detroit or Columbus.  Of course, if Schuler proceeds with his request to transfer this case to the Northern District of Ohio - where the majority of his witnesses reside - the cost to secure witness testimony would undoubtedly be less in Cleveland.

Therefore, the cost of obtaining unwilling witnesses favors transfer of this action to Cleveland.

F.    Practical Problems

The next factor the court considers is whether there are any practical problems associated with trying the case in this forum or whether the case could be tried more expeditiously and inexpensively elsewhere.  The parties have not specifically addressed this factor in their briefs.  This court can see no practical problems to this court maintaining jurisdiction over the lawsuit.

G    The interest of justice

Finally, this court considers the interests of justice.  Schuler argues that a choice of law provision in the settlement agreement calls for the application of Ohio law.  The choice-of-law provision in the settlement agreement is not controlling here.  This lawsuit alleges Schuler's faulty and inferior representation of them resulted in an unfavorable settlement agreement.  Plaintiffs allege that Schuler improperly negotiated and drafted the settlement agreement and that he had a conflict of interest which prevented him from doing so.  Moreover, that settlement agreement involved different parties - the plaintiffs here and the R&Z plaintiffs - and has no bearing over this action against Schuler.

Plaintiffs point out that Florida law may well govern this dispute because the purchasing agreement between Schuler's limited liability company, Anwalt, and TLC, provided that Florida law would govern their agreement.  In his reply brief, Schuler states that plaintiffs have not alleged that Schuler breached any duty under the participation agreement.  This court need not decide whether Michigan, Florida or even

Ohio law governs this action, as principles of fairness dictate against transfer of this action whatever law applies. Schuler has failed to show that the "interests of justice" justify depriving plaintiffs of their chosen forum and burdening them with the expense and inconvenience of prosecuting their claims in a foreign jurisdiction.

In this legal malpractice claim, assuming as true plaintiffs' allegations, Hockman has been harmed in Michigan. It is undisputed that the collection action is proceeding against him in this State. Hockman resided in Michigan at all times during his alleged representation by Schuler in the underlying lawsuit. Hockman never appeared in Cleveland or Columbus and alleges that Schuler instructed him not to appear because he was settling the matter. Because this is a legal malpractice action, it smacks of unfairness to require plaintiffs to prosecute their lawsuit in Schuler's home state when they allegedly relied on Schuler's legal advice in Michigan. Moreover, in the underlying lawsuit, the R&Z plaintiffs allege that plaintiffs here fraudulently induced them to buy membership interests in SBI. The R&Z plaintiffs lent money to TFC for use in connection with SBI and that loan was overseen at Hockman's Michigan office.

Although Schuler claims that a great number of witnesses reside in Cleveland, this court is not convinced that all twenty or so of these individuals, primarily lawyers, truly are relevant to the malpractice claim at issue here. This court looks not only at the quantity of witnesses but to the quality of witnesses. Plaintiff's own testimony about whether or not an attorney relationship did in fact exist strikes the court as more significant than the myriad of extraneous lawyers Schuler claims will testify - most of whom did not become part of the lawsuit until after the settlement was reached. Given the totality of the circumstances, equity requires deference to plaintiffs' choice of forum.

13

<u>CONCLUSION</u>

For the reasons stated above, defendant's motion to transfer venue hereby is

DENIED.

Dated:  March 18, 2008

<div style="margin-left: 40%;">

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

</div>

---

CERTIFICATE OF SERVICE


Copies of this Order were served upon attorneys of record on

March 18, 2008, by electronic and/or ordinary mail.


<u>s/Josephine Chaffee</u>

Deputy Clerk

---