UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY HOCKMAN,
ROBERT D. FALOR, and
THE FALOR COMPANIES,

        Plaintiffs,

vs.

Case No. 07-CV-14268

HON. GEORGE CARAM STEEH

ROBERT C. SCHULER,

        Defendant.

_____/

ORDER DENYING DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND
DENYING DEFENDANT'S MOTION TO STRIKE COUNT II AND III OF THE
SECOND AMENDED COMPLAINT

This legal malpractice action arises out of defendant Robert Schuler's alleged mishandling and settlement of a lawsuit brought against plaintiffs Geoffrey Hockman, Robert D. Falor, and The Falor Companies (TFC). Now before the court is Schuler's motion to to dismiss for lack of personal jurisdiction and motion to strike plaintiffs' breach of fiduciary duty and negligence claims as being duplicative of their legal malpractice claim. Oral argument was heard on January 17, 2008 and March 13, 2008. For the reasons stated on the record and set forth below, both motions shall be denied.

BACKGROUND

Plaintiffs Robert Falor and Geoffrey Hockman are principals of the now defunct TFC. Robert Falor is a resident of Chicago, Illinois. Geoffrey Hockman is a resident of

Birmingham, Michigan. TFC was in the business of investing in hotels and condominiums. TFC is an Illinois corporation. Defendant Robert C. Schuler is an attorney licensed to practice in Ohio who resides in the Southern District of Ohio. He invested in eight limited liability companies formed or administered by the plaintiffs either individually or in his capacity as sole member of Anwalt Hotel Holdings, LLC (Anwalt). Schuler, acting through Anwalt, agreed to provide the following services to the plaintiffs:

> to utilize its contacts and relationships to Introduce Falor to institutions, beneficial owners and other entities of interest to Falor. Anwalt further agrees that it shall, when appropriate, provide Falor assistance in its interaction with various governmental entities affecting the business of Falor or the investment Activity in which Falor is engaged. Additionally, Anwalt agrees to interact, consult with and give direction to the attorneys responsible for preparing and processing the documents necessary for bringing each Investment Activity to fruition.

Schuler maintains that he was an equity investor who from time-to-time assisted with the advancement of various projects.

Plaintiffs claim that Schuler maintained close ties to Michigan through his contacts with Geoffrey Hockman, a resident of Birmingham, Michigan. These contacts arise out of Schuler's involvement in the limited liability companies. Plaintiffs allege that Schuler visited Hockman in Michigan and discussed matters by telephone with Hockman and three of his employees. Each of the limited liability companies that involved Schuler were administered in Birmingham, Michigan. Schuler was paid from a Michigan bank account overseen by Hockman.

On January 18, 2008, one day after the first oral argument of defendant's motions was heard, Schuler supplemented the record by submitting a new affidavit. In

his affidavit, Schuler admits that he traveled to Michigan to meet with Hockman on two occasions - both of which he claims involved investment issues and not the underlying lawsuit for which he stands accused of malpractice. He further states that if, indeed, the underlying lawsuit was discussed, it was merely incidental to the investment issues. He further asserts that he never represented plaintiffs in any lawsuit and has never practiced law in Michigan.

In June, 2005, the plaintiffs here were sued by R&Z Real Estate, LLC, Terry Driscoll and Florentine Driscoll (the R&Z plaintiffs) in Cuyahoga County, Ohio. The lawsuit alleged securities fraud regarding membership interests in South Beach Investments (SBI) - one of the limited liability companies in which Schuler had an interest. The R&Z plaintiffs lent money to TFC for use in connection with the activities of SBI and TFC. In regard to this loan, Hockman and others in his Birmingham, Michigan office had contact with Schuler. According to plaintiffs, Schuler notified them of the lawsuit and said that he would represent them in the lawsuit, that he would "work it out." Plaintiffs allege that they agreed to have Schuler represent them. After the lawsuit was filed, the plaintiffs were defaulted but entered into a settlement. The settlement called for periodic cash payments totaling $1,500,000 to be made by the plaintiffs here to the R&Z plaintiffs. Part of the settlement agreement called for collateral valued at $2,100,000 to be placed in escrow. In 2006, plaintiffs failed to make the payments owing, and the R&Z plaintiffs executed the collateral. In addition, they obtained a judgment against the plaintiffs in the amount of $1,300,000.

In addition to his contacts relative to his limited liability companies, plaintiffs claim that Schuler also maintained contacts with Michigan with regard to the underlying

3

lawsuit. Specifically, they rely on Hockman's affidavit wherein he states that Schuler had substantial contact with him at the Birmingham office in regard to the R&Z lawsuit and settlement of the same. Plaintiffs allege that the R&Z plaintiffs lent money to TFC for use in connection with one of the limited liability companies in which Schuler maintained an interest, namely SBI. Apparently, this was done in connection with the settlement of the lawsuit.

Plaintiffs originally filed this action in Oakland County Circuit Court. Defendants removed based on diversity jurisdiction. The original one-count complaint sought relief against defendant for legal malpractice arising out of the settlement of the underlying action. In their legal malpractice claim, plaintiffs allege, among other things, that Schuler had a conflict of interest as a member of SBI. Schuler filed an answer alleging that he had no attorney-client relationship with the plaintiffs. On October 30, 2007, plaintiffs filed an amended complaint adding a claim of breach of fiduciary duty against Schuler. On November 21, 2007, plaintiffs filed a second amended complaint adding another count for ordinary negligence. Now before the court are defendant's motions (1) to dismiss for lack of personal jurisdiction, and, (2) to strike the breach of fiduciary duty and negligence counts on the grounds that they are preempted by the legal malpractice claim.

## ANALYSIS

I.  Waiver

Plaintiffs argue that defendant has waived any objection to personal jurisdiction. A defense to personal jurisdiction must be raised in a pre-answer motion to dismiss or in an answer else the defense is waived. Rauch v. Day & Night Mfg. Corp., 576 F.2d 697,

701 (6th Cir. 1978). Personal jurisdiction may be established by voluntary appearance. Id. at 700 (citing Pennoyer v. Neff, 95 U.S. 714, 725, 729 (1877)). Federal Rule of Civil Procedure 12(h)(1) provides:

> A defense of lack of jurisdiction over the person . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g) or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

The waiver rule is a hard and fast rule. In Taubman Co. v. Webfeats, 319 F.3d 770, (6th Cir. 2003), the defendant failed to raise his lack of personal jurisdiction defense in his original answer. He sought "leeway" from the court given his pro se status at the time he filed his original answer, but the court rejected his appeal for leniency on the grounds that there was no legal basis for it. Id. In this case, defendant timely filed his answer on October 11, 2007 without asserting the defense of lack of personal jurisdiction.

Schuler claims he should be allowed to contest personal jurisdiction because plaintiff filed an amended complaint on October 30, 2007. The court accepted that complaint for filing and defendant did not object. Instead, on November 12, 2007, defendant filed his motion to dismiss for lack of personal jurisdiction and to strike Count II of plaintiff's amended complaint.[1] On November 14, 2007, Schuler filed his answer to the first amended complaint which raised the defense of lack of personal jurisdiction. The question is whether defendant waived his lack of personal jurisdiction defense by waiting to raise it in his November 12, 2007 motion to dismiss rather than in his first

---

[1]On November 13, 2007, this court held a scheduling conference in this matter and allowed plaintiff to file a second amended complaint which plaintiff has done.

5

answer or within the 20-day time period allowed for amending his original answer.

In support of his argument that he did not waive personal jurisdiction, he cites to three cases where the court allowed a defendant to add counterclaims in timely response to the filing of an amended complaint. See Refuse Fuels Inc. v. National Union Fire Ins. Co., 139 F.R.D. 576, 578 (D. Mass. 1991) (allowing counterclaims to be added based on amendment of complaint as a matter of right or based on court's discretion in light of discovery), Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc., 50 F.R.D. 415, 418-19 (D. Del. 1970) (allowing counterclaims to be added where plaintiff's amended complaint transformed a simple contract dispute into a full-scale patent suit); Moellers North America, Inc. v. MSK Covertech, Inc., 912 F. Supp 269 (W.D. Mich. 1995) (allowing counterclaims where amended complaint filed). Defendant has argued that the filing of the amended complaint extended the time period for it to amend its answer. This court agrees. Defendant's amended motion to dismiss for lack of personal jurisdiction operates nunc pro tunc. Schuler has not waived his lack of personal jurisdiction defense. In any event, whether or not Schuler has waived his lack of personal jurisdiction defense is a moot point, as this court has personal jurisdiction over him with respect to all claims as discussed below.

II.   Minimum Contacts

The court now examines Schuler's contacts with Michigan to determine whether personal jurisdiction exists under the long-arm statute and whether the exercise of jurisdiction comports with due process. The plaintiff bears the burden of establishing the existence of personal jurisdiction. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S.

6

178, 189 (1936); Weller v. Cromwell Oil Co., 504 F.2d 927, 929 (6th Cir. 1974)). The level of plaintiff's burden depends upon the procedure used by the district court in deciding the issue. Serras, 875 F.2d at 1214.

If the court rules on written submissions alone, as is the case here, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction." Id. (citations omitted). When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." Id. (quoting Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980), cert. denied, 450 U.S. 981 (1981)). The plaintiff must make a "*prima facie* showing that personal jurisdiction exists." Id.

The federal district court possesses long-arm jurisdiction only in accordance with the long-arm statute of the state in which it sits. Fed. R. Civ. P. 4(e). A federal court's reach of personal jurisdiction in a diversity case is determined by the long-arm statute of the forum state. Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 376 (6th Cir. 1968). Under Michigan law, the question of whether personal jurisdiction exists requires two inquiries: first, whether the defendant's conduct falls within a provision of the Michigan long-arm statutes, and second, whether the exercise of jurisdiction comports with due process. Green v. Wilson, 455 Mich. 342, 350-51 (1997); Serras, 875 F.2d at 1216.

A.  Long-Arm Statute

The first inquiry for this court is whether or not personal jurisdiction over Schuler

exists pursuant to the long-arm statute. Am Diagnostics, Inc. v. Denney, 810 F. Supp. 887, 891 (E.D. Mich. 1993). Plaintiffs contend personal jurisdiction over Schuler exists pursuant to Michigan's limited personal jurisdiction under MCL § 600.705(1) and (2) which provides:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction,
> . . .
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

Plaintiffs contend that Schuler provided advice to Hockman regarding the settlement of the underlying action through personal contact, e-mail, mail and telephone. Plaintiffs also allege that Schuler also conducted business within Michigan with regard to SBI, TFC, and the R&Z plaintiffs. It is unclear if this contact was strictly limited to the settlement of the underlying lawsuit or if it also involved his role as an investor in the limited liability companies administered by the plaintiffs. But since it appears to the court that the lawsuit and the investment activities are intertwined, plaintiffs have satisfied the first prong of the long-arm statute, namely that Schuler transacts business within the state. This is especially true in light of the Michigan Supreme Court's holding that the "transaction of any business within the state. . . includes 'each' and 'every.' . . . It comprehends 'the slightest.'" Sifers v. Horen, 385 Mich. 195, 199 n2 (1971) (citations omitted). In addition, Schuler's business contacts with regard to his limited liability companies directly relate to plaintiffs' breach of fiduciary duty claim.

Besides these contacts which satisfy MCL § 600.705(1), plaintiffs have also shown that personal jurisdiction exists pursuant to MCL § 600.705(2) because his

8

conduct as an attorney, and/or as an investor on the "team," allegedly caused Hockman's liability in Michigan pursuant to the underlying lawsuit. Based on the settlement of the underlying lawsuit, collection proceedings have begun against plaintiffs Hockman and Robert Falor in Oakland County Circuit Court. In addition, plaintiffs allege that Schuler elected to do business with Hockman and the related limited liability companies, including SBI, all of which had a presence in Michigan. Under these circumstances, personal jurisdiction exists under the long-arm statute.

B. Due Process

The court now turns to the question of whether the exercise of personal jurisdiction over Schuler comports with the dictates of due process under the Fourteenth Amendment. "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Pennoyer v. Neff, 95 U.S. 714, 732-33 (1877)). In order to comport with due process, "minimum contacts" must exist between the nonresident defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). The Sixth Circuit has set forth three criteria for exercising personal jurisdiction over nonresident defendants in diversity cases within the bounds of due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

9

Southern Mach. Co., 401 F.2d at 381.  Under these three factors, Schuler is subject to personal jurisdiction in this court.

First, Schuler "purposefully availed" himself of the privilege of acting or causing a consequence in Michigan.  LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1300 (6th Cir. 1989), cert. denied, 494 U.S. 1056 (1990).   Schuler allegedly negotiated the settlement in the underlying lawsuit which impacted Hockman by subjecting him to collection proceedings against him in this state.  According to Hockman's affidavit, from 2004 until Summer 2006, he had at least weekly telephone contact with Schuler and several of those calls involved the underlying lawsuit, Schuler's attempts to resolve it, the value of collateral posted in settlement, the terms of the settlement agreement, and the meaning and execution of settlement documents.  In addition, Schuler communicated with Hockman by e-mail.  In the fall of 2004 and 2005, according to Hockman's affidavit, Schuler traveled to Michigan and met with him regarding numerous investments, including TFC and SBI.  Although those meetings may not have involved the underlying lawsuit per se, they involved Schuler's interest in SBI which plaintiffs claim created the conflict of interest giving rise to their legal malpractice claim.  Under this scenario, the court finds that Schuler did purposefully avail himself of the privilege of causing a consequence in Michigan.

Defendant relies on this court's prior ruling in IP Enter. Pension Fund v. Hatfield, No. 06-11162, 2006 WL 2367357 (E.D. Mich. Aug. 14, 2006) to support its claim that this court lacks personal jurisdiction over him.  That case is markedly distinguishable from the case at hand.  In IP Enter. Pension Fund, plaintiffs were the lenders of

10

promissory notes issued to the defendant Allied Financial Capital (AFC), a factoring business owned by a common law husband-wife who were also named defendants in the lawsuit. Id. at *1. Moore was the common law wife of the defendant who lived in California for her entire life. Id. Hatfield was her common law husband. Id. After the two separated, a California judge issued an order that their property was owned equally, although the two were not legally married. Id. Some time later, Hatfield's attorney wrote to Moore's attorney stating that he would not pay child support as the clients of their business, upon learning that plaintiff retained a one-half interest in the company, were demanding their investments back. Id. Moore's attorney then wrote a letter to Hatfield's counsel whose purpose was to rebut his contention that he could no longer pay child support and to push for payment of support. Id. In that letter, Moore's counsel instructed Hatfield not to repay any private lenders on the grounds that the notes bore usurious interest rates. Id. at 2. Plaintiffs sued Moore for their tortious interference with contract based solely on that letter. Id. at 3. Plaintiff argued that the court could exercise personal jurisdiction over Moore. This court held that personal jurisdiction was lacking as Moore lacked the minimum contacts necessary to satisfy principles of due process. Id. at 6-7.

    This court found that even if Moore negotiated the promissory notes in Michigan, she could not be haled into court regarding the tortious interference claim which involved an entirely separate act, namely, the mailing of the letter. Id. at *3. Moore never traveled to Michigan in connection with AFC, although she did once vacation in Michigan. Id. at 1. This court found that Moore did fall under the rubric of limited

11

personal jurisdiction because the letter did in fact demand and potentially cause a breach of the promissory notes by Hatfield, but found that exercising jurisdiction over Moore would offend the Fourteenth Amendment guarantee of due process. Id. at *4-5. This court explained that Moore did not purposefully avail herself of the privilege of causing a consequence in Michigan. Id. at *6. The court found that the mailing of the letter from Moore's attorney to Hatfield was too attenuated of a link from Moore to the plaintiffs in Michigan. Id. Moore's contacts with the state were neither systematic or continuous and Moore had no additional contact with Michigan. Id. This court also noted that the letter was not directly solely towards the Michigan plaintiffs but referred to seventy of AFC's note holders scattered about the country. Id.

  Our case is notably different. Schuler admits that he traveled to Michigan to meet with Hockman on two occasions and that he may have discussed the underlying lawsuit during his visits. He admits that he discussed his investments with Hockman. Hockman submitted an affidavit stating that he first learned of the underlying lawsuit from Schuler. Hockman states that during his meetings with Schuler in Michigan they discussed SBI. SBI is at the crux of the underlying lawsuit as the R&Z plaintiffs allege securities fraud regarding membership interests in SBI. Although Schuler may have discussed his investment interest in SBI without referencing the underlying lawsuit per se, his investment involvement in SBI is inextricably intertwined with the underlying lawsuit, especially when one considers Hockman's argument that Schuler committed malpractice because of a conflict-of-interest involving his ownership interest in SBI. Hockman further states that he had at least weekly contact by telephone with Schuler

12

from 2004 to the summer of 2006. He further attests that several of the telephone calls concerned the pendency of the underlying action, his attempts to resolve it, the value of the collateral, the settlement terms acceptable to him and Falor, and the meaning and execution of settlement documents drafted by Schuler. In addition, Hockman states that Schuler mailed documents regarding the administration of various limited liability companies, and received e-mails regarding the underlying lawsuit. Given Hockman's affidavit testimony, it appears that Schuler's contacts with Michigan were systematic and continuous and that Schuler should reasonably have anticipated being haled into court in this forum.

Secondly, the court evaluates whether this cause of action arises from Schuler's activities in Michigan. Due process requires that defendant's contacts with the forum state "must emanate from the nexus of facts leading to [the] lawsuit." AM Diagnostics, 810 F. Supp. at 895. Once again, this court finds that the requirement has been met. It is the settlement of the underlying lawsuit with the R&Z plaintiffs in Ohio that has led to collection procedures in Michigan against Hockman and TFC. Moreover, the basis for plaintiffs' malpractice and breach of fiduciary claims is that Schuler had a conflict of interest caused by his investments in SBI and TFC which should have prevented him from acting as their lawyer. Given these facts, Schuler's contacts with Michigan regarding his SBI investments are central to determining if he maintained "minimum contacts" with the forum state. Schuler and/or Anwalt is a member of eight limited liabilities companies, including SBI, all of which were administered through the Birmingham office. Schuler traveled to Michigan and met with Hockman in 2004 and

13

2005 regarding numerous investments. From 2004 to 2005, Schuler maintained weekly telephone conversations with Hockman in Michigan, some regarding investments in the limited liability companies, and some regarding the underlying lawsuit. All of the discussions are important for considering whether "minimum contacts" exist since Schuler's alleged conflict of interest is at the crux of the legal malpractice and breach of fiduciary duty claims.

Finally, this court considers whether the consequences caused by Schuler have a substantial enough connection with Michigan to make the exercise of jurisdiction over him reasonable. Once again, the court must answer "yes." Schuler had continuing contact, both in person, by telephone, by e-mail, and by letter with Hockman in Michigan over a two-year time period. The contacts involved Schuler's investments in eight limited liability companies, one of which - SBI - was the subject of the underlying lawsuit. Whether or not Schuler's status as an investor in SBI created a conflict of interest is central to this lawsuit which alleges the torts of legal malpractice and breach of fiduciary duty. In sum, Schuler's handling of matters of great financial consequence within the forum state confers the exercise of personal jurisdiction over him without offending principles of due process.

II.     Defendant's motion to strike

Schuler also moves to strike plaintiffs' breach of fiduciary duty claim and ordinary negligence claim on the grounds that they are preempted by plaintiffs' legal malpractice claim. Therefore, he argues that Federal Rule of Civil Procedure 12(f) requires their dismissal as redundant. In support of this argument, Schuler argues that Ohio law is

14

controlling because in the underlying lawsuit the settlement agreement called for the application of Ohio law. Of course, that settlement agreement does not govern this malpractice suit here as this lawsuit involves different parties, facts, claims and damages sought. This court need not decide if Ohio or Michigan law applies at this juncture, as the law of both states regarding the preemptive power of a legal malpractice is the same. See Moore v. Hadler Real Estate Mgt. Co., 4 Ohio App. 3d 89, 90 (1982) (Ohio law); Aldred v. O'Hara-Bruce, 184 Mich. App. 488, 490 (1990) (Michigan law). In both states, the only action that exists against one's attorney for inadequate legal services is a legal malpractice claim.

The rule that a legal malpractice claim is the sole vehicle for redressing wrongs committed in the context of the attorney-client relationship does not apply here since in his answer Schuler denied that he shared an attorney-client relationship with the plaintiffs. Specifically, the answer avers that Schuler "did not provide any legal services to or represent Plaintiffs in the regard to the lawsuit filed in Cuyahoga County." In his answer, defendant also pled that he "denies that he provided any advice to Plaintiffs in the context of an attorney-client relationship." After Schuler raised this defense, plaintiffs amended their complaint to add the breach of fiduciary duty claim and ordinary negligence claim.[2] Given Schuler's defense that he shared no attorney-client relationship with the plaintiffs, the plaintiffs cannot be barred from raising other tort claims. This is so because Federal Rule of Civil Procedure 8(a) allows parties to plead

---

[2]The amended complaint added the breach of fiduciary duty count and the second amended complaint added the negligence count.

in the alternative. If at trial, plaintiffs do establish that an attorney-client relationship exists, Schuler is correct that the breach of fiduciary duty claim and negligence claim must be dismissed under the doctrine of preemption. At this early stage of the proceedings, Schuler's motion to strike the breach of fiduciary duty and negligence claims must be denied without prejudice.

## CONCLUSION

For the reason stated above, defendant's motion to dismiss for lack of personal jurisdiction hereby is DENIED.

IT IS FURTHER ORDERED that defendant's motion to strike Counts II and III of the second amended complaint hereby are DENIED WITHOUT PREJUDICE.

Dated: March 18, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 18, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---