UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY HOCKMAN, ROBERT D. FALOR
AND THE FALOR COMPANIES, an Illinois
Corporation,

        Plaintiffs,

vs.

Case No. 07-CV-14268
HON. GEORGE CARAM STEEH

ROBERT C. SCHULER,

        Defendant.

_____/

ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS BASED ON RIPENESS DOCTRINE AND DENYING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS BY FALOR AND THE FALOR COMPANIES AND DENYING AS MOOT PLAINTIFF'S MOTION TO SET ASIDE DEFAULT AND TO STRIKE COUNTERCLAIM

This legal malpractice action arises out of defendant Robert Schuler's alleged mishandling and settlement of a lawsuit brought against plaintiffs Geoffrey Hockman, Robert D. Falor, and The Falor Companies by the R&Z plaintiffs. Now before the Court is Schuler's motion to dismiss for lack of ripeness based on the pendency of an Ohio state court action which involves the interpretation of the settlement agreement in dispute here. The issues have been thoroughly briefed by the parties and oral argument would not significantly aid the decisional process; therefore, pursuant to Local Rule 7.1(e)(2), Schuler's motion shall be decided solely on the written submissions. For the reasons set forth below, Schuler's motion to dismiss based on the ripeness doctrine shall be granted in part as to plaintiffs' damages claims which depend on the ruling by

the Ohio state court and shall be stayed as to plaintiffs' remaining claims. Because this Court lacks subject matter jurisdiction over a portion of this case, which must be dismissed, and is staying the remaining claims, the other pending motions in this matter shall be denied as moot.

## I. BACKGROUND

Plaintiffs Falor, Hockman, and The Falor Companies were all involved in the business of acquiring and renovating hotel properties. The Falor Companies is a now dissolved Illinois corporation. Defendant Schuler is an attorney licensed to practice in Ohio and was an investor in eight limited liability companies formed and/or administered by Plaintiffs. Plaintiffs allege that Schuler was also involved in the administration of these limited liability companies, and at various times provided legal services to these entities.

On June 14, 2005, a group of investors ("R&Z") filed suit against Plaintiffs on a delinquent loan made to South Beach Investors, LLC - one of the limited liability companies in which Schuler allegedly had an interest. Plaintiffs claim that Schuler approached them and offered to "work it out" in regard to the lawsuit since he was a member of the "team." A settlement agreement was eventually agreed upon whereby Plaintiffs would pay R&Z $1.5 million dollars in timed payments. According to the Second Amended Complaint, Hockman, Falor, and the Falor Companies executed each of the settlement documents provided to them by Schuler. (Doc. 12, ¶ 19). Plaintiffs also placed into escrow collateral, allegedly valued at $2.1 million, which R&Z could execute upon as security. Plaintiffs claim that Schuler advised them that in the event of default, this collateral would serve in lieu of further payment. The crux of plaintiffs'

malpractice and related claims is that Schuler misled them into believing that execution on the collateral would satisfy the amount due under their settlement agreement. Specifically, the Second Amended Complaint avers:

> It was always plaintiffs' understanding, based on communications with Schuler, that if R&Z executed on the collateral placed in escrow that such execution would be in full satisfaction of any and all amounts which remained due to R&Z in the event plaintiffs, and others, failed to make all of the payments to R&Z contemplated by the settlement agreement. Plaintiffs would never have agreed to settle the Ohio Lawsuit, as recommended and arranged by Schuler, if the terms of the settlement would allow R&Z to obtain the collateral **and** full payment under the settlement agreement in the event of a default by plaintiffs.

(Doc. 12, ¶ 17) (emphasis in original). The Second Amended Complaint also alleges that the $1.5 million settlement was excessive. (Id. at ¶ 18).

According to the Second Amended Complaint, in December, 2005, plaintiffs defaulted in their settlement payments to R&Z and in April, 2006, R&Z executed upon the collateral, allegedly valued at $2.1 million, placed in escrow by the plaintiffs. (Doc. 12, ¶ 12, 24). Plaintiffs allege that it was their understanding, based on communications with Schuler, that if R&Z executed on the collateral placed in escrow that such execution would be in full satisfaction of the settlement agreement. (Doc. 12, ¶ 17). According to Schuler, however, the R&Z plaintiffs have argued that the collateral was security for performance only and did not discharge the monetary debt. R&Z then claimed that Plaintiffs owed them an additional $1.3 million and obtained a Judgment to that effect in Ohio. Plaintiffs did not oppose R&Z in obtaining its Judgment in the Ohio court, allegedly based on Schuler's advice. According to the Second Amended Complaint, R&Z has brought collection actions against Hockman and Falor in Ohio, Michigan, and Illinois based on the $1.3 million judgment entered in the Ohio court. (Doc. 12, ¶ 25).

On March 7, 2007, plaintiffs filed a motion in the Cuyahoga County Court of Common Pleas in Ohio to deem the judgment satisfied based upon the execution of the collateral. (Doc. 78, Ex. 3). That motion is still pending.

Plaintiffs' Second Amended Complaint against Schuler alleges malpractice, breach of fiduciary duty, and negligence based on Schuler's acts and omissions during the initial settlement of the R&Z lawsuit as well as R&Z's successful attempt to obtain Judgment for the additional $1.3 million. In the motion now before this Court, Schuler argues that plaintiffs' claims must be dismissed as premature. Because plaintiffs' motion to deem the judgment satisfied is pending in Ohio state court, some of plaintiffs' malpractice and related claims here are not ripe for judicial review as explained below.

## II. ANALYSIS

A.  Standard of Law for Ripeness Doctrine

Schuler argues that it is entitled to Fed. R. Civ. P. 12(b)(6) dismissal or summary judgment based on the ripeness doctrine. The question of ripeness is jurisdictional so Schuler's motion is more appropriately considered as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The Sixth Circuit recently explained that the doctrine of ripeness "is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." Dealer Computer Servs., Inc. v. Dub Herring Ford, 547 F.3d 558, 560 (6th Cir. 2008) (quoting River City Capital, L.P. v. Bd. of County Comm'rs, 491 F.3d 301, 309 (6th Cir. 2007)). Ripeness "draw[s] both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Id. at 560-61 (quoting Nat'l Park Hosp., Ass'n v. Dep't of Interior, 538 U.S.

803, 808 (2003)). "Enforcing ripeness requirements discourages 'premature adjudication' of legal questions and judicial entanglement in abstract controversies." Id. at 561 (citing Warshak v. United States, 532 F.3d 521, 525 (6th Cir. 2008) (en banc)). In considering whether a claim is ripe, the Court must consider three key factors: (1) the likelihood that the harm alleged by the party will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings. United States Postal Serv. v. Nat'l Ass'n of Letter Carriers, 330 F.3d 747, 751 (6th Cir. 2003). Applying these three factors, plaintiffs' claims are not ripe for judicial review.

B.  Application of Ripeness Doctrine

    1.  Likelihood that harm alleged will come to pass

Plaintiffs' primary claim for damages against Schuler is their claim for "potential additional liability to R&Z in excess of $1.5 million dollars" which the R&Z plaintiffs have sought in addition to their execution on the collateral allegedly valued at over $2.1 million dollars. (Complaint, ¶ 31(D)). In their Complaint, plaintiffs specifically allege that "[i]n the event the Ohio Court ultimately agrees with R&Z's interpretation of the written settlement agreement," Schuler is liable for malpractice. (Complaint ¶ 30(E)). Plaintiffs' claim of potential liability in excess of $1.5 million dollars is contingent on whether or not the R&Z's execution on the collateral was in satisfaction of the debt. This is the sole issue now pending in the Cuyohoga County Court of County Pleas. In that case, the plaintiffs here - Hockman, Falor, and The Falor Companies - who are the defendants in the Ohio case, have filed a motion to deem the judgment satisfied based on the R&Z plaintiffs taking delivery of the collateral which they allege was to be in lieu of any further

5

payment according to the parties' settlement agreement. (Doc. 78, Ex. 3). Should the Ohio court grant plaintiffs' motion, their claim that Schuler committed malpractice by drafting a settlement agreement by which execution on the collateral would not extinguish the debt would be rendered moot. Although this Court cannot guess as to how the Cuyahoga County Court of Common Pleas will ultimately rule on the plaintiffs' motion to deem the judgment satisfied, there is no question that if the Ohio court rules in plaintiffs' favor, a substantial portion of the alleged damages sought here will not arise.

To satisfy constitutional requirements, a threatened injury must be sufficiently "imminent." Nat'l Treasury Employ. Union v. United States, 101 F.3d 1423, 1428 (D.C. Cir. 1996). The Sixth Circuit has held that a claim is ripe when it is "highly probable" that the alleged harm or injury will take place. See Kardules v. City of Columbus, 95 F.3d 1335, 1344 (6th Cir. 1996). Given the uncertainty over how the Ohio court will rule on plaintiffs' motion, they have failed to meet the first factor as they have not shown a likelihood that the harm alleged will actually come to pass with respect to the $1.5 million the R&Z plaintiffs seek in excess of the collateral. Plaintiffs' other claims for damages, however, namely their claim that they lost the right to defend the underlying action on the merits and lost collateral have already come to pass and are ripe for judicial review.

2. Factual Record

Consideration of the second factor also requires the conclusion that plaintiffs' lawsuit is not ripe for judicial review. The factual record remains undeveloped so long as the state matter remains pending. Plaintiffs' contend however, that their allegation regarding the potential to have to pay an additional $1.5 million to the R&Z plaintiffs is

6

only a part of the damages alleged and that they seek substantial damages unrelated to the state court case.  Schuler responds that plaintiffs are judicially estopped from arguing that their claims are unrelated to the negotiation and drafting of the settlement agreement based on their prior arguments in response to an earlier filed motion for summary judgment filed by Schuler.  Schuler's argument misses the mark as plaintiffs' other damages claims also relate to the settlement agreement and its negotiation.  Specifically, plaintiffs also seek damages for the loss of their ability to defend the underlying lawsuit on the merits as they claim to have relied on Schuler's alleged representation of them in the settlement agreement and damages for the loss of the collateral - which also was part and parcel of the settlement agreement.  The question then becomes, should this lawsuit be allowed to proceed piecemeal, with this Court bifurcating the potential liability for the $1.5 million, which is the subject of the Ohio state case, and letting the rest of the case go forward.

Plaintiffs' argument that the $1.5 million sought is only a small part of the case is not well taken.  One and a half million dollars is a significant sum of money.  Moreover, Schuler argues that if the Ohio Court rules in plaintiffs' favor, their malpractice claims are significantly diminished if not extinguished altogether.  While Schuler and plaintiffs disagree about the importance of the state court litigation to the instant suit, the Court finds that Schuler's position is the more persuasive one.  As part of this malpractice action, plaintiffs claim that Schuler failed to provide adequate representation in the settlement of the underlying matter.  The meaning and scope of that settlement, however, remains very much in dispute and will be resolved by the Ohio state court.  Until the state case is resolved, plaintiffs' malpractice action here is not ripe.  Plaintiffs

would have this case proceed in a fragmented manner, with some claims for damages going forward - namely damages for loss of the ability to defend the Ohio lawsuit on the merits and loss of the collateral - but damages claims for the potential loss of $1.5 million would be dismissed for lack of ripeness. While the Court may be permitted to proceed in the manner advocated by plaintiffs, the Court finds that the more reasonable approach is to dismiss the unripe claims and stay the remaining claims until the Ohio state court issues its opinion.

Schuler argues that this case is analogous to the situation presented in Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990) where the First Circuit held that appellant's complaint was not ripe where his RICO claim depended on his prevailing in state court on his breach of contract action. Since appellant would have no RICO claim unless he prevailed in the state court action, the First Circuit held that the claim was not ripe because it was purely speculative and dependent on another case in another court. Id. Plaintiffs argue that Lincoln House is distinguishable because, unlike that case, some of their damages claims are not dependent on their success in the Cuyahoga County court case. Their only damages claims, however, which are not dependent on a favorable ruling on their motion to deem the judgment satisfied in the state court action, are their allegations that they lost their ability to defend the Ohio lawsuit on the merits and lost their collateral as the result of Schuler's alleged malpractice. Taking plaintiffs' allegations as true that these damages claims are independent of the state court action,again the question then becomes, should this Court allow plaintiffs' claims to go forward in a piecemeal fashion. This would allow the trier of fact to consider some portion of the damages alleged, while leaving the crux of the case to be decided

following a conclusion to the state court action. This Court finds that where the primary focus of the lawsuit is not yet ripe, there is no justification to let some of the case proceed. Such a result risks duplicative litigation, or even worse, inconsistent judicial decisions together with wasted judicial resources. Thus, the Court shall stay the ripe claims pending a decision of the Ohio state court.

      3.      <u>Hardship if Judicial Relief Denied</u>

Finally, the Court considers the third ripeness factor: the hardship to the parties if judicial relief is denied at this stage in the proceedings. As an initial matter, the Court notes that any delay caused by dismissal of the Complaint at this time is likely to be short lived as the motion at issue in the Ohio state court action has already been pending for over two years. One would expect that a ruling from that court should be coming forthwith. Plaintiffs argue that they would be prejudiced by a dismissal for lack of ripeness as the statute of limitations may bar their claims once the Ohio court finally decides their motion. Plaintiffs' concern is unfounded as this Court shall only dismiss the unripe claim but shall stay the remaining action pending the Ohio state court's decision on plaintiff's motion to deem the judgment satisfied. Plaintiffs shall be allowed to reopen this case by motion and without the payment of any filing fee once the Ohio state court issues its ruling.

### III. CONCLUSION

Schuler's motion to dismiss (Doc. 78) the Complaint because it is not ripe hereby is GRANTED IN PART in that plaintiff's claims arising out of the $1.5 million dollar judgment in Ohio are hereby DISMISSED WITHOUT PREJUDICE and plaintiffs' remaining claims shall be STAYED. Upon a final ruling by the Ohio state court on

plaintiffs' motion to deem judgment satisfied, plaintiffs may reopen this case on motion without the payment of a filing fee and the statute of limitations period shall be determined from the date of the original and/or Second Amended Complaint.

In accordance with the above dismissal, Schuler's motion for summary judgment based on the statute of limitations (Doc. 79), plaintiffs' motion to set aside the entry of default on Schuler's counterclaim (Doc. 85) and defendant's motion for summary judgment as to count I of second amended complaint (Doc. 95), hereby are DENIED AS MOOT.

SO ORDERED.

Dated:  June 5, 2009

                                  s/George Caram Steeh
                                  GEORGE CARAM STEEH
                                  UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 5, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---